99 So.2d 126

**John H. HENRY**

v.

**Reuben MYLES.**

No. 43111.

Jan. 6, 1958.

Pipes & Pipes, Monroe, for plaintiff-appellant.

Dhu & Lea S. Thompson, Monroe, and W. Decker Moore, West Monroe, for appellee.

FOURNET, Chief Justice.

The plaintiff, John H. Henry, is appealing from a judgment dismissing, on exceptions of no cause or right of action, his suit for specific performance of defendant's agreement, attached to the petition, to grant to plaintiff an oil and gas lease on 80 acres of land in Ouachita Parish for a primary term of five years at $40 per acre[1] or, in the alternative, for damages based on the value of the lease, set at $16,000.

The allegations on which the suit is based are, in substance, that the greater portion of the property described in the agreement "formerly belonged to the estate of defendant's father and mother," and the remainder belongs to the defendant individually; that the latter represented to plaintiff that he was "the bona fide agent of his brothers and sisters and had full and complete authority from them to execute an oil and gas lease on their behalf;" yet when plaintiff, on August 6, 1955, went to the office of the attorney to see if the lease had been signed, he was advised by Mr. Dawkins that Reuben Myles had called and told him to cease doing curative work on the title as he, Myles, would not fulfil the agreement to lease the land; that Myles had been put in default and still refuses to

1. The agreement, signed by the parties in the presence of two witnesses, reads as follows:

"Monroe, La., May 21st, 1955
"Be It Known, that on the above date the following contract and agreement was made and entered into by and between Reuben Myles and J. H. Henry, both residents of Ouachita Parish, Louisiana, to wit:

"That the said Reuben Myles, appearing for himself, and also as agent for his brothers and sisters, does hereby agree to sell to J. H. Henry an oil and gas lease for a primary term of five years on 70 acres owned by himself and his brothers and sisters, and also ten acres belonging to himself individually, situated in Section 14 Township 17 N R 1 East for the amount of Forty Dollars per acre, with a one dollar per acre annual delay rental; and the said J. H. Henry agrees to purchase said lease on the above terms, and to pay in cash for same just as soon as the title to said property is approved by J. B. Dawkins, Attorney, and the lease is delivered to him properly signed.

"To which the said parties hereto affix their signatures in the presence of the below witnesses."

execute and transfer to the plaintiff the said lease.[2]

The district judge, in maintaining the defendant's exceptions of no cause or right of action,[3] and dismissing plaintiff's suit, expressed the view that the allegations of the petition and the wording of the agreement which forms the basis of this suit disclose that plaintiff did not rely on the representations of the defendant as to who owned the property or his authority to act for others, "but wrote into the agreement the specific condition that he [plaintiff] would not have to pay anything for the lease or sign the lease until the title of the defendant had been approved by an attorney, to-wit, Mr. J. B. Dawkins," and since the petition disclosed that Mr. Dawkins has never approved the title, the Court felt that

no action by either party for specific performance would lie until Mr. Dawkins had approved the title, that being "a specific condition in the agreement."

It is our opinion that the trial judge erred in maintaining the exceptions of no cause and no right of action in view of the allegations summarized above which, being well pleaded, must be accepted as true for the purpose of disposing of these exceptions. While Mr. Dawkins did not in fact approve the title, further work toward that end on his part would have been useless in view of the defendant's advice that he would not carry out the agreement to execute an oil and gas lease covering the property. Approval of the title was a stipulation for the benefit of the plaintiff which he has chosen to waive.[4] As the

2. The plaintiff, in estimating his damage by reason of defendant's alleged breach of contract, recites that since the execution of the agreement to lease and pending investigation of title and curative work by the attorney, a large oil well producing high gravity oil has been brought in on land within two miles of the property referred to in the agreement to lease; that oil therefrom is being sold in the maximum amount permitted under the rules of the Conservation Department, and that a lease on the property mentioned in the agreement is worth in excess of $16,000.

3. These exceptions, when filed originally, were overruled; in answering, the defendant first reserved his rights under exceptions and pleas previously filed, and again pleaded them as part of his answer. When the case was called for trial the defendant reurged his exceptions, with the result that they were maintained.

4. This is understandable in the light of averments in the answer, to the effect that some time before this suit was filed the heirs of R. H. and Fannie C. Myles (the deceased father and mother of defendant and his brothers and sisters), having advised Mr. Dawkins that they wished to have no dealings with plaintiff in the matter of a proposed lease, authorized him, Mr. Dawkins, to proceed with the legal work which was a prerequisite to granting a valid lease on the property, i. e., the opening of the parents' successions, appointment of a curator for a mentally incapacitated and insane heir, placing the heirs in possession, and securing an order of Court authorizing a lease on the part of the insane heir; and it was only after this work had been completed and a lease executed to another party that the plaintiff claimed the defendant was obligated to lease to him, the plaintiff.

case now stands the defendant has refused to carry out the agreement by which, appearing in his own behalf and as agent for his brothers and sisters, he was to grant to the defendant an oil and gas lease on the described property for a specified time at an agreed price.

But counsel for the defendant-appellee contend that on the showing made by the contract alone, the lower court's ruling maintaining the exceptions should be · affirmed. Citing our jurisprudence to the effect that a document, made part of the petition, controls the allegations as to matters shown by that contract, counsel seek to nullify the allegation (noted above) that defendant represented he had complete authority from his brothers and sisters to execute an oil and gas lease on their behalf—pointing out that in fact the defendant merely declared that "as agent for his brothers and sisters, [he] does hereby agree to sell"—and contend that the contract itself shows the defendant had no such authority as the petition alleges because it showed he was acting as agent; and (basing each statement on appropriate citation) oil and gas leases, and contracts applying to and affecting these leases, are real

rights, and rules applicable to such rights and actions control; one of these rules is that every transfer of immovable property must be in writing, and a promise to sell must be vested with the same formalities as are prescribed for sales of real estate; that the power to agree to sell or buy must be express and in writing, and proof of such agency cannot be established by parol; one dealing with an agent in a sale of realty must look to the powers of the agent, which must be in writing; and one avowedly an agent, known as such to the party with whom he contracts, is not personally responsible; all of which, it is argued, leads to the result that the agreement between the plaintiff and defendant "was not legal or binding since no authority is alleged, shown or pretended for execution of the document; and there being no legal agreement, there is no liability."

For the purpose of disclosing the fallacy in the above argument, and without considering objections which might be raised to the pertinence of the legal propositions relied on, we note that counsel rests his case on the assumption that the defendant had no written authority to act as agent.[5]  A close reading of the petition

5. Defense counsel's insistence that written authority was a prerequisite to a valid agreement by defendant becomes clear when it is noted that, according to averments in the answer, the plaintiff knew that defendant had no authority to act for his brothers and sisters; that

in obtaining defendant's signature the plaintiff, who was well acquainted with defendant and his relatives, had pretended that the agreement merely evidenced an offered price and indicated defendant's willingness to get in touch with the other heirs to see if they would execute

fails to reveal any statement which might be so interpreted, and so far as is shown by its allegations and by the terms of the contract itself, there may well have been such authority. The allegation that defendant represented himself to be a "bona fide agent," with "full and complete authority" to execute an oil and gas lease on behalf of his brothers and sisters, while more elaborate than the contract's recitation, neither states nor denies written authority, and cannot be classified as allegations injected so as to state a cause of action and not supported by the contract.

The further contention of counsel for the defendant-appellee that, this being a suit for specific performance of an agreement to lease an eighty acre tract as a single unit, the plaintiff cannot demand delivery of a lease on only the ten acres actually owned by the defendant, is untenable because there is no such provision in the contract, and therefore it is a matter to be urged by way of special defense and determined on the merits.

For the reasons assigned, the judgment appealed from is reversed and set aside, and the case is remanded to the district court for trial on the merits and according to law.

a lease on the terms and conditions suggested; and that the interpretation of

the agreement now urged by the plaintiff constitutes a flagrant fraud.